UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LESTER F. MUHAMMAD, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 2:10 cv 173 |
| | ) |
| MICHAEL HINCH and RON TAYLOR, | ) |
| | ) |
| Defendants | ) |

## OPINION AND ORDER

This matter is before the court on the Joint Motion for Summary Judgment [DE 31] filed by the defendants, Michael Hinch and Ron Taylor, on May 9, 2011. For the following reasons, the motion is **GRANTED**.

### Background

The plaintiff, Lester F. Muhammad, a *pro se* prisoner, was granted leave to proceed on a claim that the defendants, Lake County Police Officers Michael Hinch and Ron Taylor, used excessive force in effectuating his arrest in violation of the Fourth Amendment.

Officers Hinch and Taylor have been employed by the Lake County Police Department since 2005 and 2003, respectively. (Hinch Aff. ¶ 1; Taylor Aff. ¶ 1) Both received training on the proper use of force during their initial training at the Indiana Law Enforcement Academy, as well as at annual trainings conducted by certified instructors. (Hinch Aff. ¶ 3; Taylor Aff. ¶ 3)

On the afternoon of December 2, 2009, Officers Taylor and Hinch were contacted by agents of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to assist in the surveillance and arrest of Muhammad and another individual who were suspected of selling firearms from a vehicle in the parking lot of a sporting goods store in Gary, Indiana.[1] (Hinch Aff. ¶¶ 6-9; Taylor Aff. ¶¶ 6-9) The defendants were told by ATF agents that the two suspects were believed to be armed and dangerous. (Hinch Aff. ¶ 6; Taylor Aff. ¶ 6) After meeting with ATF agents, the defendants, who were in full uniform, proceeded to the sporting goods store in separate marked police vehicles and initiated surveillance of Muhammad's vehicle. (Hinch Aff. ¶¶ 7, 9; Taylor Aff. ¶¶ 7, 9) During their surveillance they maintained radio contact with each other and with ATF. (Hinch Aff. ¶ 7; Taylor Aff. ¶ 7)

During their surveillance, the defendants saw Muhammad start his vehicle and exit the parking lot. At the request of ATF agents, they followed his vehicle at a distance. (Hinch Aff. ¶¶ 10-11; Taylor Aff. ¶¶ 10-11) After a few miles, Muhammad began

---

[1] In some instances the defendants mistakenly refer to the applicable dates as having occurred in December 2010 rather than December 2009. (*See* Deft. Memo. ¶¶ 13, 26; Hinch Aff. ¶¶ 6, 27, 34) It is apparent that this is a scriveners error rather than an actual dispute between the parties. The documentary evidence that has been submitted makes clear that the events in question occurred in December 2009. (*See* Arrest Record; Compl.; Medical Records)

to drive erratically, tailgating vehicles and changing lanes without signaling. (Hinch Aff. ¶¶ 15-16; Taylor Aff. ¶¶ 15-16) Officer Taylor activated his emergency lights in order to effectuate a traffic stop. (Taylor Aff. ¶ 16) Muhammad failed to stop, however, and began to flee at a high rate of speed. (Hinch Aff. ¶ 17; Taylor Aff. ¶ 17) Officer Taylor activated his siren, and Officer Hinch activated both his siren and his emergency lights. (Hinch Aff. ¶ 18; Taylor Aff. ¶ 18) With the officers in pursuit, Muhammad continued to flee and in the process drove through several red lights. (Hinch Aff. ¶¶ 18-19; Taylor Aff. ¶¶ 18-19)

Eventually Muhammad crossed the border into Illinois and drove his vehicle into a grassy field. (Hinch Aff. ¶ 20; Taylor Aff. ¶ 20) He immediately exited the vehicle and began to run across the field. (Hinch Aff. ¶¶ 20-21; Taylor Aff. ¶¶ 20-21) The defendants both got out of their vehicles and chased Muhammad on foot. (Hinch Aff. ¶¶ 21-24; Taylor Aff. ¶¶ 21-24) They ordered him to stop but he continued running, jumping over several fences. (Hinch Aff. ¶ 28; Taylor Aff. ¶ 28) Muhammad then stumbled and fell to the ground, and as he was trying to get back up, Officer Hinch tackled him around the waist and began to put him in handcuffs. (Hinch Aff. ¶ 25; Taylor Aff. ¶ 25) Muhammad rolled on the ground and flailed his arms, but Officer Taylor held Muhammad's arms so that he could be handcuffed. (Hinch Aff. ¶¶

26-27; Taylor Aff. ¶¶ 26-27) Once he was handcuffed, Muhammad became compliant. (Hinch Aff. ¶¶ 27; Taylor Aff. ¶¶ 27)

After Muhammad was handcuffed, the officers conducted a pat-down and found a large amount of currency in Muhammad's possession. (Hinch Aff. ¶¶ 31; Taylor Aff. ¶¶ 31) The officers notified ATF agents that Muhammad was in custody and placed him in Officer Hinch's vehicle. Officer Hinch drove Muhammad to the Hammond police station and delivered him to the custody of ATF agents. (Hinch Aff. ¶ 32; Taylor Aff. ¶ 32) At around 4:00 p.m. the following day, Muhammad was brought to the Lake County Jail by the U.S. Marshal's Service and incarcerated on federal charges. (Hinch Aff. ¶¶ 34, 36; Taylor Aff. ¶¶ 34, 36) At the time of his booking, Muhammad received a medical screening by a nurse. The nurse completed a form, which Muhammad signed, indicating that he had no injuries at the time he entered the jail. (Medical Screening Form) Mugshots also were taken of Muhammad's face and upper body at the time of his booking at the jail. (Photographs) The following day, Muhammed went to St. Margaret Hospital in Hammond and had a facial bone x-ray. (*See* Comp. Exh. 1)

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is

4

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

5

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

See also *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2553; *Stephens,* 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); *Springer v. Durflinger,* 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

An officer's right to arrest an individual includes the right to use some degree of physical force, but the Fourth Amendment requires that force to be objectively reasonable under the totality of the circumstances. ***Graham v. Connor***, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." ***Graham***, 490 U.S. at 396, 109 S.Ct. at 1871. Factors to consider include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was resisting arrest or attempting to evade arrest by flight. ***Graham***, 490 U.S. at 396, 109 S.Ct. at 1872. The court must employ an objective standard, viewing the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." ***Graham***, 490 U.S. at 396, 109 S.Ct. at 1872. The reasonableness of the force used is judged from the perspective of the officer and asks whether the officer "used greater force than was necessary to make the arrest." ***Payne v. Pauley***, 337 F.3d 767, 778 (7th Cir. 2003). Furthermore, the "calculous of reasonableness must embody allowance for the fact that police officers

are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97, 109 S.Ct. at 1872.

Here, the undisputed facts show that at the time of Muhammad's arrest, the defendants had received information from federal agents that he was suspected of selling firearms and was believed to be armed and dangerous. (Hinch Aff. ¶¶ 6-9; Taylor Aff. ¶¶ 6-9) The defendants witnessed Muhammad driving recklessly for several miles, running multiple red lights, and endangering the lives of bystanders. (Hinch Aff. ¶¶ 16-28; Taylor Aff. ¶¶ 16-28) Muhammad disregarded the defendants' attempts to get him to stop his vehicle and led them on a foot chase, again ignoring their commands to stop. (Hinch Aff. ¶¶ 25-28; Taylor Aff. ¶¶ 25-28) Under these circumstances, there can be no dispute that the officers were entitled to use force to effectuate Muhammad's arrest. *See Johnson v. Scott*, 576 F.3d 658, 659 (7th Cir. 2009) (finding police were entitled to use force to subdue fleeing suspect who was believed to be armed); *Marion v. City of Corydon, Indiana,* 559 F.3d 700, 705-06 (7th Cir. 2009) (explaining that use of force was reasonable where suspect led officers on a high speed chase, showing no regard for safety of officers and by-

8

standers). The question remains whether they used more force than was necessary under the circumstances.[2]

The officers acknowledge that they tackled Muhammad and forcibly held his arms in order to handcuff him, but they deny that they struck, punched, or kicked him at any time. (Hinch Aff. ¶¶ 30-33; Taylor Aff. ¶¶ 30-33) Muhammad, on the other hand, asserts that the defendants brutally beat him by repeatedly kicking, punching, and kneeing him in the face and body when he was not resisting. (Pltf. Resp. pp. 1-2) Based on the documentary evidence, however, no reasonable jury could believe Muhammad's account. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

As proof that Muhammad was not injured at the time he was taken to the jail, the defendants submitted a medical screening form from the jail that Muhammad signed and pictures taken of Muhammad at the time he arrived at the jail. The medical screen-

---

[2] Muhammad has submitted a document that he labels as a "motion to strike." (DE 34) He offers no basis for striking any of the defendants' documents, and instead it is apparent that he intended his filing to refute the defendants' version of events. Given his *pro se* status, the court has construed this filing as his response to the motion for summary judgment. However, Muhammad has not denied that he led the officers on a high speed chase, ran from his car, or resisted their efforts to handcuff him.

ing form indicates that Muhammad had no bleeding, injuries, or other medical problems at the time he entered the jail. Muhammad does not dispute that he signed the form, but he claims that the nurse told him not to document his injuries on the form because "the Marshal's had already took [sic] care of it."[3] At most, this statement creates a question of fact concerning why there were no injuries listed on the medical screening form. However, it does not overcome the additional evidence the defendants submitted, nor does it prove Muhammad suffered injuries.

The defendants also submitted three photographs of Muhammad taken at the time he was booked at the jail. None of them show any bruising, bleeding, or other injuries that would be evident had Muhammad endured the beating that he describes with multiple kicks and punches to his face. (*See* Memo in Supp. Exh. D) Muhammad does not dispute that the mugshots accurately depict his appearance at the time he was booked. In fact he does not mention the photographs in his response to the motion for summary judgment. (*See* Pltf. Resp.) The only evidence Muhammad refer-

---

[3]Although the nurse's statement is an out of court statement, it is not hearsay because it is not offered for the truth of the matter asserted. Rather, it is offered to show the reason for Muhammad's actions. *See* **United States v. Gaytan**, 2011 WL 3528753, *5 (7th Cir. 2011) (explaining that "out-of court statements are not hearsay if they are offered not for the truth but to put the defendant's statements in context or to make what he said and did in reaction to the [declarant's] statements intelligible to the jury"). Muhammad is offering the nurse's statement to establish the reason why he did not record his alleged injuries on the intake form, and the nurse's statement is admissible for this purpose.

10

ences in an effort to establish that he suffered injuries was the medical bills he received from a Hammond hospital, which reflect that he was seen at the hospital on December 3, 2009, and received a "facial bones x-ray." (*See* Comp. p.1) Muhammad does not explain, nor is it clear from the present record, how he came to be seen at the hospital on that date. Regardless, at most these documents show that Muhammad underwent a diagnostic test, because he does not submit any documentation or offer any explanation about what, if anything, the x-ray revealed. (*See* Pltf. Resp.) The simple fact that Muhammad underwent a test does not create a genuine issue of material fact regarding whether the defendants used excessive force against him.

It was Muhammad's burden to come forward with evidence supporting his version of events, and he has produced nothing to counter the defendants' photographs, such as medical records, other photographs, or a report from the U.S. Marshals Service, showing that he incurred an injury consistent with the severity of the beating he describes. In the absence of such evidence, no reasonable jury could find in his favor. *See **Scott***, 550 U.S. at 380, 127 S.Ct. at 1776. Accordingly, the defendants are entitled to summary judgment.

_____

For the reasons set forth above, the Joint Motion for Summary Judgment (DE 31) filed by the defendants, Michael Hinch and Ron Taylor, on May 9, 2011, is **GRANTED**.

ENTERED this 2nd day of September, 2011

                                      s/ Andrew P. Rodovich,
                                          United States Magistrate Judge